FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 12, 2018

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULIA RODRIGUEZ-GARCIA, | No. 1:17-cv-03017-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 17, 21 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 21. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court

ORDER - 1

grants Plaintiff's Motion (ECF No. 17) and denies Defendant's Motion (ECF No. 21).[1]

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a

---

[1] Defendant's Motion fails to comply with Local Rule 10.1(a)(2) and this Court's Scheduling Order, ECF No. 16 at 2, requiring double-spaced footnotes, thereby circumventing the length restrictions set forth in Local Rule 7.1. Defense counsel is to ensure that future filings comply with this rule as this continued practice may result in subsequent filings being stricken.

ORDER - 2

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and

past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income benefits on December 13,

2012, alleging an onset date of October 24, 2012.  Tr. 19, 188-93.  Benefits were

denied initially, Tr. 107-115, and upon reconsideration, Tr. 119-27.  Plaintiff

appeared for a hearing before an administrative law judge (ALJ) on September 12,

2014.  Tr. 38-81.  On May 29, 2015, the ALJ denied Plaintiff's claim.  Tr. 16-35.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful

activity since December 13, 2012.  Tr. 21.  At step two, the ALJ found Plaintiff has

the following severe impairments: degenerative disc disease, sacroiliac

dysfunction, asthma, and obesity. Tr. 21. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23. The ALJ then concluded that Plaintiff has the RFC

> to perform a full range of light work as defined in 20 CFR [§] 416.967(b). She can occasionally lift up to 20 pounds and frequently lift or carry up to 10 pounds. She can stand or walk for approximately six hours and sit for approximately six hours in an eight-hour workday with normal breaks. She can frequently push and pull. She can frequently climb ramps or stairs and never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold, excessive vibration, and pulmonary irritants such as fumes and gases, and workplace hazards such as dangerous machinery or working at unprotected heights.

Tr. 23. At step four, the ALJ found Plaintiff is capable of performing past relevant work as a retail sales clerk. Tr. 27. In the alternative, at step five, the ALJ found there are jobs in significant numbers in the national economy that Plaintiff can perform, such as cashier II, small products assembler, basket filler, egg candler, bottling line attendant, semiconductor bonder, table worker, and semiconductor die loader. Tr. 28-29. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from December 13, 2012, through the date of the decision. Tr. 30.

On December 1, 2016, the Appeals Council denied review, Tr. 1-7 making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 17. Plaintiff raises the following issues for review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly weighed Plaintiff's symptom claims; and

3. Whether the ALJ properly found at step five that Plaintiff could perform other work in the national economy.

*See* ECF No. 17 at 6.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff faults the ALJ for discounting the opinions of treating physician William Robinson, M.D. and a certified physician's assistant, John Spitler, PA-C. ECF No. 17 at 14.

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians. 20 C.F.R. § 416.902. In weighing acceptable medical source opinions there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who

review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

Prior to March 2017, physician's assistants were not classified as an "acceptable medical source." *See* 20 C.F.R. § 416.902(a)(8). Instead, physician's assistants were defined as "other sources" not entitled to the same deference as an "acceptable medical source." *Molina*, 674 F.3d at 1104. The ALJ is required to consider evidence from "other sources," but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so." *Id.*

In this case, the opinion of the state agency reviewing doctor, Guillermo Rubio, M.D., Tr. 93-102, contradicts the opinions of Dr. Robinson and Mr. Spitler. Therefore, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Robinson's opinions and germane reasons for rejecting Mr. Spitler's opinions.

### 1. Dr. Robinson's August 2014 Opinion Re: Use of an Assistive Device

In August 2014, Dr. Robinson prescribed Plaintiff a four-wheeled walker with a seat and brakes. Tr. 712, 726. The ALJ evaluated Dr. Robinson's prescription for a walker as akin to a medical opinion and accorded it "little weight." Tr. 26.

Plaintiff contends the ALJ erred by rejecting Dr. Robinson's prescription for a walker. ECF No. 17 at 13-16. Relatedly, Plaintiff contends the ALJ's RFC assessment erroneously fails to account for limitations related to Plaintiff's prescribed use of an assistive device. ECF No. 17 at 13-16.

ORDER - 10

The ALJ's decision acknowledged Dr. Robinson as Plaintiff's primary care provider, Tr. 26; noted Plaintiff's back and left lower extremity symptoms and "giveaway weakness on the left," Tr. 25; acknowledged Plaintiff's asthma and obesity exacerbate her other conditions, Tr. 25; and acknowledged Plaintiff's use of a prescribed cane, including a quad cane, Tr. 24; and a walker with four wheels prescribed by Dr. Robinson. TR. 23-24. The RFC allowed for standing and walking six hours during an 8-hour workday and made no accommodation for Plaintiff's use of an assistive device. The ALJ concluded there was no indication it was medically required. Tr. 26-27.

The use of a "medically required hand-held assistive device" may "significantly erode" the occupational base for an individual who must us such a device. Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *7. Thus, an ALJ must consider the impact of a "medically required" hand-held assistive device as it relates to a Plaintiff's RFC. "To find that a hand-held assistive device is medically required, there must be a medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id*. SSR 96-9P does not require the device to have been prescribed

by a physician, so long as there is medical documentation establishing its necessity.

a. Inconsistent with the Medical Record

Initially, the ALJ concluded the prescription was "inconsistent with the claimant's longitudinal treatment history, the objective clinical findings, and the claimant's performance on physical examinations set forth above." Tr. 26. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Here, the ALJ's general conclusion failed to provide any specific details or citations to support the finding.

In the Ninth Circuit, it is incumbent upon the ALJ to more thoroughly evaluate the opinion:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Moreover[,] the ALJ's analysis does not give proper weight to the subjective elements of the doctors' diagnoses. The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted). The ALJ's conclusory statement is insufficient because it provides no details to assess the basis for the ALJ arriving at this conclusion. *Id*.; *McAllister v.*

*Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (the ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Next, the ALJ rejected Dr. Robinson's prescription for an assistive device, finding that "there is no indication that her use of an assistive device is medically required." Tr. 27. A report's consistency with other records, reports, or findings can form a legitimate basis for evaluating the reliability of a report. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). A medical provider's opinion can be rejected if unsupported by medical findings, personal observations, or test reports. *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). Here, the ALJ found that "shortly before" requesting the walker in August 2014, Plaintiff "was doing well on medication without side effects and bearing weight fully with a steady gait, normal motor strength and sensation, and full active range of motion." Tr. 27. In support of the ALJ's characterization of the medical evidence, the ALJ cited to three medical records. First, the ALJ cited chart notes from two emergency room visits for exacerbated back pain from November 3, 2013, Tr. 861, and February 11, 2014, Tr. 823, which are neither "shortly before" Dr. Robinson's prescription, or suggestive that Plaintiff was "doing well." *See* Tr. 862 (dispensing Toradal); Tr. 824 (dispensing valium). These relatively short encounters in the emergency room

are not persuasive sources as to Plaintiff's treatment and overall condition at the time of Dr. Robinson's prescription.  The ALJ also cited a July 30, 2014 progress note from Heidee Hanson, PA-C at Waters Edge Pain Relief Institute, where Plaintiff had been treated since at least 2011.  The note sets forth all 25 of Plaintiff's prescribed medications at the time, including oxycodone for pain.  Tr. 783-84; *cf.* Tr. 485 (exam performed August 8, 2011 listing single medication, Ibuprofen).  The "pain assessment" portion of the note documented Plaintiff's use of an assistive device and her "difficulty walking due to the sharp pain."  Tr. 783. It further stated, "[Plaintiff] uses cane to walk and she feels like she limps and trips a lot."  *Id*.  The cited records do not support the ALJ's rejection of Dr. Robinson's medical opinion regarding Plaintiff's need for an assistive device.  Moreover, absent from the ALJ's analysis and decision was any discussion of the numerous relevant clinical findings that Plaintiff ambulated with an "antalgic" (painful) gait. *See* Tr. 369, 370, 371, 409, 529, 533, 535, 536, 537, 650, 658, 664, 666, 697, 699, 952.  The medical evidence cited by the ALJ does not contradict Dr. Robinson's prescription and opinion regarding Plaintiff's need for an assistive device. Accordingly, the alleged inconsistency with the medical evidence is not a specific, legitimate reason supported by substantial evidence to discredit his opinion.

b. Contemporaneous Treatment Notes

Next, the ALJ concluded that Dr. Robinson's contemporaneous treatment notes did not "support such restrictive limitations." Tr. 27. Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, Dr. Robinson's contemporaneous treatment note specifically elaborates on the basis for the walker prescription stating: "[s]he needs a four wheeled walker with brakes and a seat. She is having leg and pelvic pain, severe COPD, chronic back pain . . . . She is using a cane but is tripping and having leg pains. She has increasing shortness of breath, pelvic discomfort, and gait abnormality." Tr. 726. The ALJ's decision does not acknowledge this statement of need and purpose. Defendant contends the ALJ "reasonably inferred" that Dr. Robinson was "merely fulfilling Plaintiff's request," because the treatment note also states "[s]he wants a walker. She says it was recommended." ECF No. 21 at 9. However, the ALJ did not conclude Dr. Robinson was "merely fulfilling" a request, and as Plaintiff contends, a logical inference, based on the record, is also that "she requested it because she needed it, and her doctor agreed." ECF No. 22 at 9. Regardless of what could have been inferred, the ALJ failed to discuss the notations in the treatment record that support Dr. Robinson's prescription and why

she rejected them, which makes it impossible for the Court to determine whether this reason is supported by substantial evidence. This is legal error.

c. Self-reports

Finally, the ALJ discredited Dr. Robinson's prescription and Plaintiff's use of an assistive device because his assessment was "based at least in part on the claimant's self-report of pain," which were partially discounted by the ALJ. Tr. 27. Defendant concedes, that standing alone, this is not a sufficient basis to reject Dr. Robinson's opinion. ECF No. 21 at 10. The Ninth Circuit in *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) contemplated that medical sources rely on self-reports to varying degrees and held that an ALJ may reject a medical source's opinion as based on unreliable self-reports only when the medical source relied "more heavily" "on a patient's self-reports than on clinical observations." 763 F.3d at 1162. The ALJ erred in failing to make such a finding here.

In conclusion, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Robinson's August 2014 prescription.

*2. Dr. Robinson's Jan. and June 2014 Opinions and Mr. Spitler's Opinion*

In January 2014 and June 2014, Dr. Robinson opined that Plaintiff was severely limited, unable to push, pull, bend over, or squat, and unable to sit or stand for long periods of time without increased pain. Tr. 710-11, 723-25. Dr.

Robinson indicated Plaintiff would likely miss four or more days of work per month due to her impairments.  Tr. 711.  In January 2013, Mr. Spitler opined that Plaintiff cannot sit, stand, or bend for prolonged periods of time.  Tr. 576.  The ALJ assigned these opinions little weight.  Tr. 26.

The ALJ rejected these opinions with the same conclusory sentence stating that assessments were "inconsistent with the claimant's longitudinal treatment history, the objective clinical findings, and the claimant's performance on physical examinations set forth above."  Tr. 26.  The ALJ's decision lacks the specificity required for review by this Court and required by the Ninth Circuit.  *Embrey*, 849 F.2d at 421-22.

The ALJ failed to provide specific and legitimate reasons, or germane reasons for according Dr. Robinson's and Mr. Spitler's opinions little weight.  As such, on remand, all the medical evidence must be re-examined, and to the extent necessary, conflicting evidence on the issues must be reconciled by the ALJ.

**B. RFC and Steps Four and Five**

The improper rejection of Dr. Robinson's medical opinion regarding the use of an assistive device undermines the ALJ's conclusion that an assistive device is not "medically required," the RFC determination, and reliance upon testimony from the VE which did not consider this additional limitation.

The ALJ's determination that an assistive device is not medically required is not supported by substantial evidence, which results in error that could impact the RFC. The ALJ's rejection of Plaintiff's contention that she needs an assistive device to ambulate analyzed only Dr. Robinson's prescription of a walker, which the Court has concluded was not properly discredited. The ALJ's analysis wholly fails to account for evidence in the medical record continuously documenting Plaintiff's constant use of a prescribed[2] cane since 2011 for the purposes of ambulation, pain relief, and stability. *See* Tr. 318 (November 21, 2012 note indicating "uses quad cane"); Tr. 371 (January 3, 2013 note indicating "using a cane to assist with ambulation"); Tr. 374 (November 16, 2012 note indicating "uses a cane to walk"); Tr. 376 (November 13, 2012 note indicating "uses a cane to walk. Her gait appear stable and is able to ambulate short distance without a cane."); Tr. 382 (October 31, 2012 note indicating "walks with a cane on the right and a guarded gait on the left"); Tr. 409 (December 5, 2012 note indicating "[u]ses cane to ambulate"); Tr. 480 (September 20, 2011 note indicating uses cane borrowed from cousin); Tr. 536 (January 8, 2013 note indicating "uses a cane for ambulation"); Tr. 586 (November 7, 2013); Tr. 601 (December 3, 2013 note

_____

[2] Though the prescription for the cane does not appear to be part of the record, it is undisputed the cane was prescribed in 2011. Tr. 24, 61, 229; ECF No. 22 at 8.

indicating "uses a cane to ambulate for the past two years"); Tr. 602 (November 20, 2013 note indicating "ambulates with cane which seems to help"); Tr. 664 (February 26, 2013); Tr. 674 (January 3, 2013); Tr. 697 (March 26, 2013 note indicating "She ambulates with an antalgic gait using a single-point cane"); Tr. 726 (August 4, 2014 note indicating "using a cane but is tripping and having leg pains"); Tr. 752 (February 12, 2014 "She has to walk with a cane because her leg gives out on her."); Tr. 783 (July 30, 2014 note indicating "She uses cane to walk and she feels like she limps and trips a lot."); Tr. 873 (October 1, 2013); Tr. 927 (February 17, 2013).[3]

Though the Court recognizes a physician's observation that a claimant uses a cane is not necessarily probative of medical necessity, here the evidence is probative: there is overwhelming provider documentation of frequent, continuous use over the course of three years, not a single record documenting skepticism or questioning the legitimacy of her use of an assistive device, and no evidence of malingering or exaggeration. The record accounts for Plaintiff's use of a prescribed cane, frequency of use, and its purpose. Furthermore, at the hearing, the ALJ specifically inquired about the walker and cane, asking Plaintiff "Why don't

---

[3] The Court notes the record does reflect several good days when she had obtained pain relief and ambulated without assistance. Tr. 342, 662, 694.

ORDER - 19

you still use a cane?" Tr. 61. Plaintiff explained that she was told leaning to one side was "causing more hurt and more harm than it was good," and that the walker gives her more stability. *Id*. Plaintiff does not drive, she has someone drive her, and has been provided a handicapped parking permit. Tr. 64, 630.

In sum, beyond the fact Plaintiff was prescribed the use of an assistive device, the ALJ's failure to analyze the Plaintiff's continuous use of a cane does not convince the undersigned that the medical record was adequately considered in determining medical necessity.

This error was harmful, as the RFC did not include any limitation for the use an assistive device and the vocational expert (VE) gave no testimony regarding whether any the jobs he identified could be performed if Plaintiff required the use of an assistive device. The ALJ asked the VE whether the need for a cane "for prolonged ambulation or ambulation on uneven surfaces" "would impact *any* of the jobs." Tr. 76 (emphasis added). The VE explained that the Dictionary of Occupational Titles does not address the issue of using a handheld assistive device and the use of such a device would be a "special accommodation" which would have to be tolerated by the employer. Tr. 77.

The ALJ rejected this testimony stating: "the issue is whether the limitation affects the individual's ability to perform the job and it would not at the sedentary level, which generally does not involve prolonged ambulation." Tr. 29. Though

the ALJ recognized the correct issue is the impact on the ability to perform, the ALJ did not ask the VE how the use of a cane (in her right dominant hand, Tr. 408) or a four-wheeled walker would affect Plaintiff's ability to perform any of the jobs, including her past relevant work. *See, e.g., Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) (discussing that it was "likely and foreseeable that using both hands would be necessary to perform 'essential, integral, or expected' tasks in an acceptable and efficient manner" in the jobs testified to by the vocational expert). If the use of an assistive device was medically required (as Plaintiff's treating physician believed and the record suggests), then the ALJ must defer to the expertise of a VE in determining what impact the use of the assistive device has on either the light or sedentary occupational base. The ALJ did not obtain necessary VE testimony to permit an informed assessment of the occupational base, including any impact on the number of jobs available.

**C. Remaining Issues**

Plaintiff's remaining contentions are that the ALJ did not offer clear and convincing reasons to discredit Plaintiff's symptom testimony, ECF No. 17 at 6-9; the ALJ erred in adopting the March 2013 findings of non-examining physician, Dr. Rubio, because he did not have the remainder of Plaintiff's treatment record and therefore the ALJ failed to consider the combined impact of Plaintiff's asthma and obesity on her other condition, ECF No. 22 at 5-7 (addressed in the Reply);

and the ALJ's hypothetical to the VE was incomplete due to the omission of the adopted limitation precluding concentrated exposure to hazards, ECF No. 17 at 17.

Having concluded the ALJ erred in the evaluation of the medical evidence, determination of the RFC, and step four and five analysis, and that remand is required, the Court declines to address Plaintiff's remaining arguments. The Court comments generally that the ALJ's two-paragraph summation of the extensive medical evidence is insufficient. Tr. 24-25. For example, the decision does not discuss: imaging from 2011 and 2014; osteopathic manipulation therapy, Tr. 669; physical therapy without relief, Tr. 508-25, 372; seven interventional injections, Tr. 582; recommended therapy unobtained due to lack of insurance coverage; and, as characterized by her treating physician, the "huge number" of prescribed medications she takes including opioids. Tr. 676; *see* Tr. 783-84 (July 30, 2014 listing 25 medications).

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by

remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Plaintiff requests a remand with a direction to award benefits, in part based upon a supplemental opinion, obtained after the hearing, based on a review of the record by Rox Burkett, M.D., Tr. 1091-96. ECF No. 18 at 4. The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). The medical opinions of record must be properly evaluated by the ALJ. When an ALJ's denial is based upon legal error or not supported by the record, the usual course is for the Court to remand for further proceedings. Moreover, where there is conflicting evidence concerning the need for an assistive device, it is the ALJ's task, and not the Court's, to properly resolve conflicts in the evidence. As

not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate. *Treichler*, 775 F.3d at 1101.

Instead, this Court remands this case for further proceedings. Upon remand, the ALJ should further develop the record and issue a new decision. The ALJ should reevaluate all of Plaintiff's impairments; all medical source opinions; Plaintiff's credibility; Plaintiff's RFC; findings at step three, and if necessary Plaintiff's ability to perform work at steps four and five. Plaintiff may present new arguments and evidence and the ALJ may conduct further proceedings as necessary.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 17) is **GRANTED.**

2. Defendant's Motion for Summary Judgment (ECF No. 21) is **DENIED**.

3. The District Court Executive is directed to file this Order, enter **JUDGMENT FOR PLAINTIFF**, **REVERSING** and **REMANDING** the matter pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for additional proceedings consistent with this recommendation.

1        4. The District Court Executive is further directed to enter this Order,

2 provide copies to counsel, and **CLOSE** the file subject to re-opening for a properly

3 presented application for attorney fees.

4        DATED this March 12, 2018.

5                         *s/Mary K. Dimke*

                         MARY K. DIMKE

6                UNITED STATES MAGISTRATE JUDGE